United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  LEXAR MEDIA, INC.,                              No. C03-00355 MJJ

12              Plaintiff,                          **ORDER DENYING LEXAR MEDIA
                                                    INC.'S MOTION FOR SUMMARY
13       v.                                         JUDGMENT**

14  FUJI PHOTO FILM USA, INC.,

15              Defendant.
                                          /
16

17                          **INTRODUCTION**

18       Before the Court is Plaintiff Lexar Media Inc.'s Motion for Summary Judgment of

19  Infringement of U.S. Patent No. 6,397,314.  (Doc. No. 199.)  Defendant Fuji Photo Film, U.S.A.,

20  Inc. Opposes the Motion.

21       For the following reasons, the Court **DENIES** Plaintiff's Motion.

22                        **FACTUAL BACKGROUND**

23       Unless otherwise noted, the Court finds that the following facts are undisputed.  Plaintiff

24  asserts infringement of Claim 1 of Plaintiff's U.S. Patent No. 6,397,314 ("the '314 Patent) by Fuji

25  Photo Film U.S.A., Inc. digital still cameras ("DSCs") when coupled with xD Picture Card flash

26  memory cards supporting Multi-Block Programming with capacities of at least 64 megabytes ("xD

27  Cards"), and SmartMedia cards supporting Multi-Block programming with capacities of 64

28  megabytes or 128 megabytes ("SM Cards").  Claim 1 reads as follows:

              1.  A memory storage system comprising: a memory controller
              coupled to a host for transferring sectors of information; and one or

more nonvolatile memory unit for storing information organized into sectors, each nonvolatile memory unit coupled to said memory controller circuitry via a memory bus, said each nonvolatile memory unit having blocks, each of said blocks including a plurality of sectors, said memory controller receiving more than one sector of information from a host and programming two or more sectors of information to two or more blocks of each non-volatile memory unit simultaneously, wherein the speed of programming operation is increased by programming two or more sectors to two or more blocks within nonvolatile memory unit simultaneously.

A Fuji DSC, when coupled with a xD Card or SM Card is a memory storage system.  As is pertinent here, in its January 24, 2005 Claims Construction Order, the Court construed certain terms of Claim 1 as follows:

| Term | Construction |
|---|---|
| "controller" | a device that interfaces between a host and nonvolatile memory. |
| "host" | interfaces, through the controller, with nonvolatile memory |

Plaintiff contends that the following infringe Claim 1 of the '314 Patent:

**Accused xD DSC Systems:** Any of FinePix S2Pro, FinePix S3Pro, FinePix S20 Pro, Fine Pix S3100, FinePix S3500, FinePix S5000, FinePix S5100, FinePix S5500, FinePix S5600, FinePix S7000, FinePix S9500, FinePix F10, FinePix F30, FinePix F11, FinePix F420, FinePix F440, FinePix F450, FinePix FF455, FinePix F700, FinePix F710, FinePix F810, FinePix V10, FinePix Z1, FinePix Z2, FinePix Z3, FinePix E500, FinePix E510, FinePix E550, FinePix E900, FinePix A120, FinePix A330, FinePix A340, FinePix A400, Finepix A500, FinePix A600, FinePix M603, with an xD Card of 64 MD capacity or greater that supports the FSP mode inserted in the camera.

**Accused SM DSC Systems:** Any of FinePix 50i, FinePix 4800 Zoom, FinePix 4900 Zoom, FinePix 6800 Zoom, FinePix 6900 Zoom, FinePix 602 Zoom, FinePix F601 Zoom, with a SM Card of 64 MB or 128 MB capacity that supports the MBP feature inserted into the camera.

(Plf's Reply at 2.)  Each DSC contains a Large Scale Integrated Circuit ("LSI") that manages the operation of the DSC. The xD and SM Cards do not contain a built-in memory controller. Each of the accused DSCs is capable of interfacing with either a removable SM Card or removable xD Card, depending on the DSC model.  Each of the xD and SM Cards have one or more nonvolatile memory

1  unit for storing information organized into sectors, each nonvolatile memory unit having erasable

2  blocks, which include a plurality of sectors

3  **LEGAL STANDARD**

4  **I.      Summary Judgment**

5          Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

6  no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

7  law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

8  initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

9  depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

10  of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

11  party meets this initial burden, the burden then shifts to the non-moving party to present specific

12  facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex, 477 U.S. at 324*;

13  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-movant's

14  bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

15  for summary judgment.  *Anderson, 477 U.S. at 247-48*.  An issue of fact is material if, under the

16  substantive law of the case, resolution of the factual dispute might affect the case's outcome.  *Id.* at

17  248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at

18  250.  Thus, a genuine issue for trial exists if the non-movant presents evidence from which a

19  reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

20  material issue in its favor.  *Id.*  However, "[i]f the [non-movant's] evidence is merely colorable, or is

21  not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations

22  omitted).

23  **II.     Infringement**

24          Determining whether a patent claim has been infringed involves two steps: (1) claim

25  construction to determine the scope of the claims, followed by (2) determination of whether the

26  properly construed claim encompasses the accused devices. *Vitronics v. Conceptronic, Inc.*, 90 F.3d

27  1576, 1581-82 (Fed. Cir. 1996).  The first step, claim construction, is a matter of law to be decided

28  by the court.  *See Cybor Corp. v. FAS Tech., Inc.*, 138 F. 3d 1448, 1456 (Fed. Cir. 1998).  The

**United States District Court**
For the Northern District of California

1    patentee has the burden of proving by a preponderance of the evidence that every limitation of the

2    patent claims asserted to be infringed is found in the accused device or process either literally, or

3    under the doctrine of equivalents.  *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F. 2d

4    878, 889 (Fed. Cir. 1988).

5          The doctrine of equivalents must be applied to the individual elements of a claim, and not to

6    the claim as a whole.  *Warner-Jenkinson Co. V. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

7    The doctrine of equivalents, however, cannot be allowed such broad play so as to effectively

8    eliminate the claim in its entirety.  *Id.*  Literal infringement requires that the patentee prove that the

9    accused product or process meets every element or limitation of a claim.  *Rohm and Haas Co. v.*

10   *Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).  If even one element or limitation is missing or

11   is not met as claimed, then there is no literal infringement.  *See Mas-Hamilton Group v. LaGard,*

12   *Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998); *see also Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542,

13   547 (Fed. Cir. 1994) ("For literal infringement, each limitation of the claim must be met by the

14   accused device exactly, any deviation from the claim precluding a finding of infringement.").

15         Finally, infringement, whether literal or under the doctrine of equivalents, is a question of

16   fact.  *Ferguson Beauregard v. Mega Sys.*, LLC., 350 F. 3d 1327, 1338.  The Court must vie the

17   evidence in the light most favorable to the non-movant and draw all reasonable inferences in its

18   favor, and must resolve all doubt over factual issues in favor of the opposing party.  *SRI Int'l v.*

19   *Matsushita Elec. Corp. Of Am.*, 775 F. 2d 1107, 1116 (Fed. Cir. 1985). Summary judgment is

20   improper when there is a conflict between expert opinions; a trial with the refining fire of

21   cross-examination is a more effective means of arriving at a conclusion than perusal of ex parte

22   declarations of experts.  *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986); *Hilgraeve*

23   *Corp. v. McAfee Assocs.*, 224 F.3d 1349, 1353 (Fed. Cir. 2000). ("[D]ifferences in the experts'

24   descriptions of [the allegedly infringing program] raise a genuine issue of material fact…. The

25   determination of whether either [expert's] description (or neither) is correct requires a factual

26   determination of the actual operation of the [program].").

27   / / /

28   / / /

**United States District Court**
For the Northern District of California

**ANALYSIS**

**A.     Evidence of Direct Infringement.**

Having considered the parties' arguments, and the evidence submitted, the Court concludes that the record establishes a genuine issue of material fact on the issue of direct infringement that precludes Plaintiff's request for adjudication of this issue.

**B.     The Disputed Claim Limitations**

> 1.     *"a memory controller coupled to a host for transferring sectors of information"*

Plaintiff contends that the DSCs themselves contain both the host and the controller.  More specifically, Plaintiffs present evidence that they claim support their contention that the LSI chip includes both a host and a controller.  According to Defendant, its expert concluded, and the claim language and the claims construction make clear that the controller must be a device that is separate and distinct from the host.  This interpretation, says Defendant,  is consistent with the purpose of Plaintiff's invention (using nonvolatile mass storage to replace hard disk storage), and with the specifications for the '314 patent which consistently show  and describe  the controller as an integrated circuit device that is separate from the host.  Defendant then offers evidence that the LSI "host" itself has been designed to include the logic and functionality necessary to make use of flash media.  In other words, the LSI performs all of the processing necessary to generate the signals for transmitting data between the LSI and flash memory card.  (*See e.g.*, Adachi Decl.)

Plaintiff, however,  points to testimony by Defendants' Rule 30(b)(6) witness acknowledging that the designation "HMCTL" for the LSI used in the accused DS-300 and DS-330 DSCs to control SM Cards is an acronym for media controller.  Plaintiffs also offers a schematic from the FinePix E550 Service Manual indicating that information is sent to a media controller. (Cherensky Decl., Exh. K at FJC000084). The Schematic contains a "FinePix E550 Block Diagram" depicting a block labeled "Media" which is the only block connected to the xD card connector.  (*Id.* at FJC000085.)  According to Plaintiffs, this configuration shows that all data must pass through the Media block in order to get to the memory card.  Plaintiffs contend that applying the Court's construction of controller leads to the conclusion that the Media block must be the claimed controller.

5

1      Under the Court's claims construction order, a "host" interfaces, through the controller, with

2   nonvolatile memory, and a "controller" is a device that interfaces between a host and nonvolatile

3   memory. Accordingly, the Court agrees that a host and a controller have different functional

4   purposes. The Court did not, however, determine what form the host or controller must take, and the

5   Court's construction does not require that the host and controller be separate devices or chips. Here,

6   in arguing that its DSCs lack a controller, Defendants have deemed the LSI the host, and only the

7   host. But in so characterizing the LSI, Defendants raise the inference that the LSI interfaces *through*

8   *a controller*, with nonvolatile memory." Order at 40 ("host" interfaces, through the controller, with

9   nonvolatile memory."). Plaintiffs have offered evidence suggesting that some part of the LSI

10  functions as a controller. Defendants have offered contrary evidence. As such, the Court finds that

11  there is a triable issue of material fact as to whether the accused camera/card systems meet the claim

12  limitation of *"a memory controller coupled to a host for transferring sectors of information."*

13      Because the Accused Products must meet each limitation of the claim for there to be

14  infringement, *see Freedom Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed Cir. 2005),

15  and the Court has determined that there is a triable issue as to whether the accused DSC/Card

16  systems meet this claim element, it declines to examine the other claim elements at issue in

17  Plaintiff's Motion, and **DENIES** Plaintiff's Motion for Summary Judgment on its claim for direct

18  infringement.

19  **D.    Indirect Infringement, Contributory Infringement and Inducement.**

20      Plaintiff also seeks summary judgment for indirect infringement under 35 U.S.C. §271(b)

21  (inducement) and §271(c) (contributory infringement). However, indirect infringement requires

22  proof of direct infringement. *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir.

23  2006). As discussed above, the Court finds that there is at triable issue as to whether the Accused

24  Products meet the claims limitations such that they infringe Plaintiff's patent. Accordingly, the

25  Court **DENIES** Plaintiff's Motion for Summary Judgment on its Inducement and Contributory

26  Infringement claims.

27  / / /

28  / / /

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion.

**IT IS SO ORDERED.**

Dated: March 1, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

7